## AFFIDAVIT

I, Philip Sipple, a Detective of the Kansas City, Missouri Police Department, being duly sworn, declare and state as follows:

1. I am a Detective with the Kansas City, Missouri Police Department (KCMOPD) and have been employed by the KCMOPD for twenty years. I have been assigned to the Drug Enforcement Unit for two years. I have been a Detective in the Domestic Violence Unit, Traffic Investigations Section, and Street Narcotics Undercover Squad for a total of approximately four and a half years. I was assigned as a Patrol Officer for approximately thirteen and a half years. During my tenure in the Drug Enforcement Unit, I have been involved in numerous investigations of individuals for importing and distributing controlled substances and possessing and trafficking illegal firearms. I have communicated extensively with other state and federal law enforcement personnel who specialize in drug and firearms investigations. I have extensive experience with interviewing defendants, participating witnesses, informants, and other persons with personal experience and knowledge of drug and illegal firearms trafficking.

2. This Affidavit contains information necessary to support probable cause for the application. It is not intended to include every fact or matter observed by me or known by law enforcement. The information provided is based on my personal knowledge and observations, information conveyed to me by other law enforcement officials, information discovered through confidential sources, and my review of reports prepared by law enforcement officials.

### PROPERTY TO BE SEARCHED AND EVIDENCE TO BE SEIZED

3. This Affidavit is submitted to establish probable cause for the issuance of a search warrant for three cellular telephones collectively referred to as the **Target Cellular Telephones**.

1

The devices were recovered from 1219 Euclid Avenue, Kansas City, Missouri and are more specifically described below.

4. The devices recovered from 1219 Euclid Avenue, Kansas City, Missouri, a residence used and occupied by Curtis Lewis were:

    a. **Target Cellular Telephone 1**: a black Samsung Galaxy Note 8 cellular telephone, Model #SM-N950U, IMEI #358505086490154,

    b. **Target Cellular Telephone 2**: a white Apple iPhone, Model A1429, IME #990002813553128, and

    c. **Target Cellular Telephone 3**: a blue in color Samsung Phone, IMEI #35518211136674.

5. The **Target Cellular Telephones** are currently secured as evidence in the Western District of Missouri, in the custody of the Kansas City, Missouri Police Department. In my training and experience, I know the **Target Cellular Telephones** have been stored in a manner in which their contents are, to the extent material to this investigation, in substantially the same state as they were when the devices first came into the possession of the law enforcement.

6. The property to be seized from the **Target Cellular Telephones** is described in Attachment B.

## OFFENSES UNDER INVESTIGATION

7. Based upon my training and experience, and on the facts set forth in this Affidavit, there is probable cause to believe the **Target Cellular Telephones** contain evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846, conspiracy and attempt to possess with intent to distribute and distribution of controlled substances; Title 21, United States Code, Section 843(b), unlawful use of a communication facility; Title 18, United States Code, Section

924(c), possession of a firearm in furtherance of a drug trafficking crime; Title 18, United States Code, Sections 922(g) and 924(a), felon in possession of a firearm, and Title 18, United States Code, Section 2, aiding and abetting the commission of the aforementioned offenses (hereinafter "**Target Offenses**").

## PROBABLE CAUSE

8. On December 3, 2020, officers with the KCMOPD were dispatched to 137 N. White Avenue, Kansas City, Missouri, on a medical call. Radawn Kelley (DOB: 01/22/1987) was transported to Truman Medical Center. Officers contacted CODI MONTEER (W/M, DOB he provided was: 12/04/1987[1]), who stated he was Kelley's boyfriend. MONTEER notified officers that Kelley drank a pint of Crown (a brand of liquor) and took a Xanax (alprazolam) but was in bed asleep and snoring when he left the residence. On December 5, 2020, Kelley passed away at Truman Medical Center. On January 11, 2021, investigators were notified by the Jackson County Medical Examiner's Office that an autopsy of Kelley revealed she died from complications of fentanyl and alprazolam intoxication.

9. On August 19, 2021, investigators contacted Zachary Williams (DOB: 02/13/1991) to discuss the distribution of controlled substances in the Kansas City metropolitan area. Williams was advised of his *Miranda* rights and waived those rights prior to being asked any questions. Williams stated CURTIS LEWIS (B/M, DOB: 04/08/1983), a 40-year-old black male using the moniker "Cuz" was selling large amounts of black tar heroin. Williams stated he has seen LEWIS with as much as 300 grams of black tar heroin.

10. On August 25, 2021, investigators contacted Ian Hazel (DOB: 11/30/1989) to discuss the distribution of controlled substances in the Kansas City metropolitan area. Hazel was

---

[1] MONTEER's date of birth is 01/24/1987.

3

advised of his *Miranda* rights and waived those rights prior to being asked any questions. Hazel told investigators he has purchased fentanyl and methamphetamine from MONTEER, and MONTEER can sell up to twenty-five pounds of methamphetamine in a week and is currently supplied by individuals in Mexico via a shipping service. Hazel stated MONTEER lives around East 12th Street and Euclid Avenue in Kansas City, Missouri. Hazel also indicated MONTEER might own several of the houses on Euclid Avenue between East 12th and East 13th Streets.

11. On August 30, 2021, investigators spoke with Hazel again. Hazel stated he has known MONTEER for approximately nine years. Hazel stated MONTEER started selling controlled substances in August 2020. Hazel informed investigators that since August 2020, he has purchased approximately 1.4 kilograms of heroin, 1.8 kilograms of methamphetamine, and 226 grams of fentanyl from MONTEER. During his contacts with MONTEER, Hazel has observed approximately 1 kilogram of heroin, 22.6 kilograms of methamphetamine, 283 grams of fentanyl, and 2,500 "M30" pills. Hazel also stated he traded MONTEER a .300 Blackout AR-15 style pistol for 226.8 grams of methamphetamine. Hazel also stated he traded MONTEER a Glock 23, .40 caliber firearm for a Springfield XD, .45 caliber firearm.

12. Based on training and experience, investigators are aware that counterfeit oxycodone pills containing fentanyl are being distributed in the Kansas City area. These pills are typically blue in color and stamped with "M" and "30." These counterfeit pills have been associated with numerous fatal and non-fatal fentanyl overdoses in the Kansas City area.

13. On September 15, 2021, investigators contacted a Confidential Source (CS) who provided information about a group selling black tar heroin, methamphetamine, fentanyl, and cocaine in the Kansas City metropolitan area. The CS stated one of the individuals uses the monikers "Menace" and "Cuz Lewis," and the other individual goes by "Jason Wren." The CS

4

stated "Menace" and "Jason Wren" sell drugs from 1219 Euclid Avenue, and the residence next door, which the CS believed was 1223 Euclid Avenue. The CS stated "Menace" and "Jason Wren" have several firearms to include assault rifles, a 3D printed gun called a "ghost gun," and a pill press used to make counterfeit pills containing fentanyl.

14. On September 17, 2021, investigators met with Williams again. After waiving his *Miranda* rights, Williams stated Marc Downs (DOB: 06/30/1989) and Joseph Garcia (DOB: 12/25/1991) were selling fentanyl and in possession of several firearms. Williams further stated Downs resides at "1220 Euclid" and sells guns and drugs from the residence. Investigators believe Downs resides at 1225 Euclid Avenue, Kansas City, Missouri. Williams informed investigators that the methamphetamine sold by Downs is very potent and looks like very clear shards of broken glass. Williams stated he recently traded Downs a five-shot revolver for twenty-one grams of methamphetamine. The trade of the firearm for methamphetamine occurred at Downs's residence on Euclid. During the transaction, Williams observed Downs to be in possession of approximately one ounce of fentanyl and half a pound of methamphetamine. Williams further stated MONTEER is selling large quantities of methamphetamine in the northland area of Kansas City, Missouri.

15. On September 19, 2021, investigators located an advertisement on a Facebook Marketplace page titled "Kansas City Swap Shop" that listed a 1968 Oldsmobile Cutlass, blue with white top, two-door coupe with 26" chrome rims for sale. The advertisement was listed by a Facebook profile with the name "Codi Monteer."

16. On September 22, 2021, the CS and an unwitting source arranged the purchase of controlled substances from "Menace." The CS and unwitting source were searched for controlled substances, firearms, and money with negative results. Investigators provided the CS with $300 of pre-recorded buy money. The CS and the unwitting source drove to 1219 Euclid Avenue,

5

Kansas City, Missouri and made contact with "Menace" through Facebook telling him they were outside. Surveillance investigators observed LEWIS exit the front door of 1219 Euclid Avenue while the CS and unwitting source walked into 1219 Euclid Avenue. LEWIS, the CS, and unwitting source sat in the living room of the residence and discussed the price of drugs. The CS told LEWIS the CS wanted $300 worth of methamphetamine and black tar heroin. The CS handed LEWIS the $300 or pre-recorded buy money in exchange for purported methamphetamine and heroin. The CS and unwitting source told LEWIS they were looking to purchase a quarter pound of methamphetamine, to which LEWIS responded that he could obtain that by the next day (September 23, 2021). The CS and unwitting source exited the residence and left the area.

17. The CS provided investigators with the purchased substances. The CS and unwitting source were again searched for controlled substances, firearms, and money with negative results. The CS and unwitting source told investigators LEWIS and MONTEER may be stepbrothers. Investigators showed the CS a photograph of MONTEER, and the CS identified him as the individual the CS knew as "Jason Wren."

18. Information the CS has provided to date has been verified by investigators and found to be reliable. The CS does not have any felony convictions. The CS is currently working for consideration related to the CS's arrest for possession of methamphetamine. Additionally, the controlled buys conducted in this investigation were audio recorded and monitored by investigators.

19. The purported methamphetamine weighed approximately 23.25 grams, and the TruNarc device indicated the presence of methamphetamine. The purported black tar heroin weighed approximately 1.2 grams, and the TruNarc device with the "H" solution indicated the presence of heroin.

20. Video was obtained during the controlled buy at 1219 Euclid Avenue on September 22, 2021. In the video, the CS holds what appears to be a clear plastic Ziploc-style bag containing approximately two ounces (56.7 grams)[2] of purported methamphetamine. The video also shows what appears to be a black AR-15 style handgun laying on the floor inside 1219 Euclid Avenue.

21. On September 23, 2021, the CS arranged, through Facebook, the purchase of controlled substances from LEWIS. Before the purchase, the CS was searched for controlled substances, firearms, and money with negative results. Investigators provided the CS with $1,200 of pre-recorded buy money. The CS drove to 1219 Euclid Avenue. When the CS arrived, LEWIS was standing on the porch of 1225 Euclid Avenue. 1225 Euclid Avenue is the next residence to the south of 1219 Euclid Avenue. LEWIS walked to 1219 Euclid Avenue and the CS and LEWIS entered the residence. The CS provided LEWIS with the $1,200 of pre-recorded buy money in exchange for 114.87 grams of purported methamphetamine. The CS exited the residence and left the area.

22. The CS provided investigators with the purchased substance. The CS was again searched for controlled substances, firearms, and money with negative results. Investigators showed the CS a photograph of LEWIS, and the CS identified him as the individual the CS knew as "Menace" and "Cuz Lewis." The CS confirmed LEWIS was the person the CS had purchased controlled substances from in the controlled buys on September 22 and 23, 2021.

23. The purported methamphetamine weighed approximately 114.87 grams, and the TruNarc device indicated the presence of methamphetamine.

---

[2] This is a conservative estimate by investigators based only on the appearance of the substance.

24. On September 30, 2021, the CS, through Facebook, arranged the purchase of controlled substances from LEWIS. The CS was searched for controlled substances, firearms, and money with negative results. Investigators provided the CS with $2,200 of pre-recorded buy money. The CS went to 1219 Euclid Avenue and knocked on the front door. An unknown white male with tattoos on his face, believed to be Downs, exited 1225 Euclid Avenue and walked to 1219 Euclid Avenue. The male knocked on the door and then opened a window and began yelling inside the residence for "Curt" who did not answer immediately. LEWIS ultimately responded and the CS and unknown male entered 1219 Euclid Avenue to join LEWIS. An unknown white female exited 1225 Euclid Avenue and then entered 1219 Euclid Avenue. After a brief argument, the unknown male and unknown female exited 1219 Euclid Avenue and returned to 1225 Euclid Avenue where they entered the residence. LEWIS informed the CS that they would have to go to another place to get the methamphetamine. The CS and LEWIS entered the CS's vehicle.

25. LEWIS directed the CS to 2450 Hardesty Avenue, Kansas City, Missouri. Upon pulling into the parking area for 2450 Hardesty Avenue, the CS and LEWIS started talking about a vehicle parked in the parking area. LEWIS stated it was a 1968 Oldsmobile Cutlass with 26" rims, which matched the description of the vehicle advertised on Facebook by the profile in the name of MONTEER. The CS provided LEWIS with the $2,200 of pre-recorded buy money. LEWIS took the money and approached the basement door of 2450 Hardesty Avenue. After he knocked, the door opened, and LEWIS entered the basement door. A short time later, LEWIS exited the residence and returned to the CS's vehicle. Once inside the vehicle, LEWIS showed the CS approximately ten ounces (283.5 grams) of purported methamphetamine.

26. The CS then drove LEWIS back to 1219 Euclid Avenue. Inside the residence, LEWIS weighed out two grams of purported fentanyl and seven ounces (198.45 grams) of

8

purported methamphetamine and provided it to the CS. During the controlled buy, LEWIS also told the CS that the back of 1225 Euclid Avenue was a "bike" shop. LEWIS stated, "it's actually not a bike shop; it's a house that we hustle out of too." The CS asked LEWIS if anyone could go over there, or if that house was just for certain people. LEWIS told the CS it is not for everybody because "we are selling dope out the house at the same time the bikes are getting fixed."

27. The CS provided investigators with the purchased substances. The CS was again searched for controlled substances, firearms, and money with negative results.

28. The purported methamphetamine weighed approximately 197.55 grams, and the TruNarc device indicated the presence of methamphetamine. The purported fentanyl weighed approximately two grams, and the TruNarc device indicated the presence of fentanyl.

29. On October 3, 2021, officers with the KCMOPD were dispatched to 2543 Holmes Road, Kansas City, Missouri, on a report of a suspicious prowler. The officers contacted the owner of the property, who was utilizing the property for short-term rentals through Airbnb, and requested the occupants be removed from the property for several violations of the rental agreement. Upon arrival, the officers contacted a white male, later identified as MONTEER, in the living room of the apartment. MONTEER stated his girlfriend was in the bedroom getting dressed. MONTEER then exited the residence and left the area. The officers then contacted Brittney Stanley (DOB: 12/10/1992). Stanley told officers the backpack and shoebox she put on the front porch of the residence did not belong to her.

30. Officers took custody of the backpack and shoebox on the porch. Inside the backpack and shoebox, officers located approximately 98.38 grams of fentanyl, 150.47 grams of methamphetamine, 3,672 grams of marijuana, 324 grams of psilocybin mushrooms, 834 blue pills imprinted "M30", 53 unknown pink pills, and 572.44 grams of unknown substances. Officers

also recovered $6,846 in United States currency; a Rock Island Armory, .38 Super caliber M1911A1 firearm, serial number RIA2061498; a stolen Glock, Model 23, .40 caliber firearm, serial number RN911; nine rounds of .38 Super ammunition; and thirteen rounds of .40 caliber ammunition. Based on the recovery by officers, Stanley was arrested. A search incident to her arrest revealed approximately 14.9 grams of methamphetamine, ten bars of Xanax (alprazolam), and 5.97 grams of marijuana.

31. The owner of the property at 2543 Holmes Road, Kansas City, Missouri, requested the vehicles parked in the driveway and blocking the driveway to the property be towed. The officers observed a blue with white top 1968 Oldsmobile Cutlass (VIN #336778M3440282) parked in the driveway, a vehicle associated with MONTEER, and a black 2012 Nissan Altima, bearing Missouri license #05NUQ8, blocking the driveway. The inventory prior to towing the Nissan resulted in the recovery of a Century Arms, AK-47, 7.62x39 mm, bearing serial number M70B1C301326; a Smith and Wesson, Model 15, .38 caliber revolver, bearing serial number K656338; nineteen rounds of 7.62x39 ammunition; and six rounds of .38 caliber ammunition.

32. On October 7, 2021, a United States Postal Inspector intercepted a package addressed from Jesus Ramon, 1152 S. Ditman Avenue, Los Angeles, California and addressed to Gorge Ramos, 2450 Hardesty Avenue #C, Kansas City, Missouri (a residence associated with MONTEER). A police K-9 alerted to the package, indicating the odor of controlled substances emanating from the package. At that time, the package was seized. A federal search warrant (21-SW-00442-WBG) was issued allowing the search of the package. When the search warrant was executed, investigators located approximately 169.21 grams of fentanyl, 1,883.56 grams of methamphetamine, and 2,000 pills imprinted "M30."

10

33. On October 14, 2021, the CS arranged, through Facebook, the purchase of controlled substances from LEWIS. The CS was searched for controlled substances, firearms, and money with negative results. Investigators provided the CS with $2,000 of pre-recorded buy money. The CS went to 1219 Euclid Avenue and met with LEWIS. Outside the residence, near the CS's vehicle, the CS and LEWIS met with MONTEER who gave the CS 100 "M30" pills in exchange for $1,100 of the pre-recorded buy money.

34. The CS, LEWIS, and MONTEER entered 1219 Euclid Avenue. While inside, a party believed to be Jamison E. Hopson-Stephens (DOB: 06/24/1984) arrived carrying a black duffle bag. The CS was introduced to this person, believed to be Hopson-Stephens, and the CS was told his name was "Jay." The CS observed MONTEER give Hopson-Stephens $12,000. The CS then purchased five grams of fentanyl from "Jay" in exchange for $900 of pre-recorded buy money.

35. During the controlled buy, LEWIS told the CS about the incident that led to a shooting on October 3, 2021, where LEWIS suffered three gunshot wounds to the leg. LEWIS told the CS the shooting was not random or road rage. LEWIS stated he knew who shot him and returned fire during the incident. LEWIS would not disclose the identity of the person(s) responsible for the shooting. However, during the controlled buy, LEWIS was carrying a Glock, Model 30, .45 caliber firearm. LEWIS told the CS the firearm he possessed during the buy was the same firearm he used during the October 3 shooting.

36. The CS provided investigators with the purchased substances. The CS was again searched for controlled substances, firearms, and money with negative results. The CS told investigators that "Jay" had approximately four ounces (113.4 grams) of what the CS believed to

11

Case 4:21-sw-00527-LMC   Document 1-1   Filed 11/30/21   Page 11 of 17

be fentanyl in the duffle bag. The CS also observed a money counter and pill press inside the residence.

37. The purported fentanyl weighed approximately five grams, and the TruNarc device indicated the presence of fentanyl.

38. On October 15, 2021, about eight days after the package addressed to 2450 Hardesty Avenue was seized by the United States Postal Service, investigators drove by 2450 Hardesty Avenue and observed Downs and MONTEER moving items out of the basement of the residence and placing them on a trailer. Based on their observations, investigators believed MONTEER was moving out of the residence on Hardesty Avenue. Investigators also observed MONTEER place unknown items in the trunk of a red Audi, bearing Illinois license 150316, before leaving the area. Investigators followed MONTEER to a residence at 5003 N. Topping Avenue, Kansas City, Missouri. In the backyard of the residence next door, 5007 N. Topping Avenue, investigators observed the blue and white 1968 Oldsmobile Cutlass with 26" wheels.

39. On October 26, 2021, at approximately 8:15 p.m., the CS drove to 1219 Euclid Avenue and met with LEWIS. LEWIS called MONTEER via cellular telephone and arranged to buy a quarter pound of methamphetamine and twenty grams of fentanyl. At approximately 12:30 a.m. on October 27, 2021, LEWIS and the CS drove to the Sinclair gas station located at 5101 E. Front Street, Kansas City, Missouri. LEWIS mentioned to the CS how close the Sinclair gas station was to MONTEER's address and provided the address of "5003 N. Topping." The CS asked if the fentanyl from MONTEER would be as good as the fentanyl the CS previously purchased from "Jay." LEWIS implied that it would be the same quality by telling the CS that he (LEWIS), MONTEER, and "Jay" all had the same source of supply.

40. While waiting for MONTEER to arrive at the gas station, LEWIS received a phone call from MONTEER stating he (MONTEER) was leaving his residence. Investigators have a covert pole camera directed toward 5003 N. Topping Avenue. After LEWIS received the phone call from MONTEER stating MONTEER was leaving his residence, investigators, through the covert pole camera, observed an individual matching MONTEER's description exit the residence at 5003 N. Topping, enter the driver's seat of a red Audi, and leave the area. LEWIS and MONTEER discussed MONTEER's location over the phone several times until the red Audi pulled into the parking lot of the Sinclair gas station and parked next to LEWIS and the CS. At that time, it was confirmed MONTEER was the driver of the red Audi.

41. Once MONTEER arrived at the Sinclair gas station, he (MONTEER) contacted LEWIS at the CS's vehicle. The CS provided LEWIS $3,500 in pre-recorded buy money. LEWIS obtained purported methamphetamine and fentanyl from MONTEER. The CS and LEWIS then left the Sinclair station. MONTEER left the Sinclair station and drove toward 5003 Topping. However, MONTEER parked outside of a residence on the way to 5003 Topping and remained in the red Audi. Due to the time of night and inability to remain covert, physical surveillance of MONTEER had to be terminated. The CS and LEWIS returned to 1219 Euclid Avenue where LEWIS weighed out the purported fentanyl. LEWIS provided the CS with approximately 114 grams of purported methamphetamine and 21.22 grams of purported fentanyl. The CS observed at least 80 grams of purported fentanyl in LEWIS's possession at the residence.

42. The purported methamphetamine weighed approximately 114.12 grams, and the TruNarc device indicated the presence of methamphetamine. The purported fentanyl weighed approximately 21.22 grams, and the TruNarc device indicated the presence of tramadol. The substances have been forwarded to the crime laboratory for confirmatory testing.

43. On November 9, 2021, a little after 6:00 a.m., FBI SWAT and investigators served a federal search warrant (Case No. 21-SW-00487-JAM) on the residence at 1219 Euclid Avenue, Kansas City, Missouri. The sole occupant of the residence was LEWIS. LEWIS was detained after eventually following verbal demands to exit the residence.

44. In the living room area, investigators located a Glock, Model 30, .45 caliber semi-automatic pistol, bearing Serial Number PTS080. The Glock firearm was found in plain view on a table in the living room area of the residence. The table is near the front entry door through which LEWIS exited the residence. The Glock firearm was loaded with .45 caliber rounds in the magazine, but no live round in the chamber. There were also two boxes of ammunition found on the same table. On the ground near the table, investigators found two clear bags with residue.

45. On a separate table (a coffee table) in the living room, investigators located a black scale with residue, **Target Cellular Telephone 1**, and **Target Cellular Telephone 3**. On the floor next to that coffee table, investigators also located **Target Cellular Telephone 2**.

46. In a bathroom, investigators located a green leafy substance consistent with marijuana in the toilet. There was also approximately 136 grams of a green leafy substance consistent with marijuana on the floor.

47. In an upstairs bedroom, investigators located a Bersa Thunder, .380 caliber handgun, bearing Serial Number E59581. The Bersa Thunder firearm was located in what appeared to be a heating or air conditioning vent in the floor of the bedroom. The Bersa Thunder handgun was loaded with .380 caliber rounds in the magazine and a live round in the chamber.

48. LEWIS was read his *Miranda* rights by me (FBI Special Agent Dustin W. Green). LEWIS waived his rights and agreed to speak with investigators. LEWIS stated he was aware of his status as a convicted felon. Further, he was aware he was prohibited from possessing a firearm

because he is a convicted felon. LEWIS stated he previously served six years of a twelve-year prison sentence for a robbery conviction. LEWIS told investigators he had been at the 1219 Euclid residence since November 8, 2021. LEWIS denied the residence was his, but stated his friend pays him to watch the residence to prevent it from being broken into. LEWIS estimated he was at the residence almost daily for the previous month.

49. LEWIS was shown **Target Cellular Telephone 1** and confirmed the telephone was his and active. LEWIS also confirmed he communicates with MONTEER through Facebook on the phone. While the investigator was holding the phone, a new Facebook message from a profile associated with MONTEER appeared on the screen.

50. A review of LEWIS' criminal history revealed the following:

   a. On July 9, 2001, in Jackson County, Missouri Circuit Court, Case Number 16CR00000336-01, LEWIS was convicted of Robbery in the First Degree and Armed Criminal Action. He was sentenced to three years' imprisonment for the Armed Criminal Action. For the Robbery, he was sentenced to ten years' imprisonment, but execution of that sentence was suspended and he was placed on a five year term of probation;

   b. On July 9, 2001, in Jackson County, Missouri Circuit Court, Case Number 16CR01002213-01, LEWIS was convicted of Burglary in the First Degree and Burglary in the Second Degree. He was sentenced to nine years' and five years' imprisonment, respectively;

   c. On June 28, 2011, in Jackson County, Missouri Circuit Court, Case Number 1116-CR01503-01, LEWIS was convicted of Resisting a Lawful Arrest, Driving while Revoked (misd.), and Leaving the Scene of Motor Vehicle Accident (misd.). He received a sentence of two years' imprisonment on the felony Resisting a Lawful Stop and thirty days in jail on the misdemeanor offenses;

   d. On August 10, 2015, in Jackson County, Missouri Circuit Court, Case Number 1516-CR01617-01, LEWIS was convicted of Resisting a Lawful Arrest. He was sentenced to four years' imprisonment; and

> e. On August 10, 2015, in Jackson County, Missouri Circuit Court, Case Number 1416-CR01563-01, LEWIS was convicted of Robbery in the Second Degree. He was sentenced to five years imprisonment.

51. The affiant knows, through training and experience, it is common for drug traffickers to utilize "flip phones" (commonly referred to as "throwaway" or "burner" phones) to deter law enforcement detection due to the ease of replacing them. The affiant also knows drug traffickers utilize "smart phones" to password protect the contents of the phone to deter law enforcement from observing the contents of the phone. The affiant knows, again through training and experience, drug traffickers will often carry firearms to protect their drugs or the proceeds from their drug sales.

52. The affiant also knows through training and experience, drug traffickers commonly carry multiple phones to communicate with friends/family, customers, and source of supplies for their drugs. Investigators also know individuals who deal in illegal controlled substances commonly maintain addresses or telephone numbers in mobile telephones, utilizing the internal mobile phone electronic storage, which reflect names, addresses and/or telephone numbers for their associates, to include sources of supply, distributors, and customers, in their criminal organizations. In addition to continuing their illegal businesses, these individuals utilize mobile telephone systems to maintain contact with their criminal associates. In addition, most mobile telephones on the market today have built in electronic digital cameras and video capabilities. Individuals who deal in illegal controlled substances take, or cause to be taken, photographs of themselves, their associates, their properties, their illegal products, and the cash proceeds from these illegal transactions. These individuals usually maintain these photographs and videos in the internal electronic storage of the mobile telephone. It is the affiant's belief that there is additional evidence of drug trafficking and association of co-conspirators stored in the

16

**Target Cellular Telephones** recovered during the execution of a search warrant based on controlled buys of methamphetamine, heroin, and fentanyl.

53. Based upon the foregoing information, investigators believe there is probable cause that the **Target Cellular Telephones** contain additional evidence of federal crimes to include the **Target Offenses**. Therefore, investigators are seeking a search warrant to search the **Target Cellular Telephones** and seize the information listed in Attachment B.

FURTHER AFFIANT SAYETH NAUGHT.

PHILIP SIPPLE
Detective
Kansas City, Missouri Police Department

Subscribed to and sworn to before me

this  30th  day of November 2021. Sworn to by telephone
12:02 PM, Nov 30, 2021

HONORABLE LAJUANA M. COUNTS
United States Magistrate Judge
Western District of Missouri